UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

RHONDA LEDFORD, et al.,

            Plaintiffs,

    v.

IDAHO DEPARTMENT OF JUVENILE
CORRECTIONS, et al.,

            Defendants.

Case No. 1:12-cv-00326-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

The Court has before it the defendants' motions for summary judgment, the plaintiffs' motion for leave to file a supplemental complaint, and a dispute over the attorney-client privilege.  The matters are fully briefed and at issue.  For the reasons explained below, the Court will grant in part the pending motions and rule that the attorney-client privilege in this specific instance has been waived.

## LITIGATION BACKGROUND

This is a whistleblower case. The original ten plaintiffs – employees of the Idaho Department of Juvenile Corrections – claimed they suffered retaliation when they protested unsafe conditions at the Nampa facility.  The retaliation, they claim, was designed to suppress their protected speech and prevent the public from finding out about deplorable conditions at the facility that placed juvenile inmates in danger.  After several rounds of motions, and a decision by the Ninth Circuit, the only remaining claims contained in the Second Amended Complaint are for violations of the Idaho Constitution's protected speech provision and the Idaho Whistleblower Act.

The defendants have filed motions for summary judgment attempting to dismiss these remaining claims.  The plaintiffs have filed a motion to supplement their complaint with new claims of retaliation arising since the original complaint was filed.  Specifically, the proposed supplemental complaint alleges that in retaliation for filing this lawsuit, defendants fired three plaintiffs and took various adverse actions against others, including demotions, refusals to transfer, and poor evaluations.

Finally, the parties have a dispute over deposition questions.  Defense counsel instructed the deposition witness – IDJC's Director Harrigfeld – not to answer certain questions based on the attorney-client privilege.  The parties have asked the Court to determine whether that invocation of the privilege was proper.

The Court will turn first to the motion to supplement the complaint

**Motion to File Supplemental Complaint**

Plaintiffs move to supplement their complaint under Rule 15(d). Specifically, they seek to add allegations and claims that they were victims of retaliation for pursuing this lawsuit.  The proposed supplemental complaint alleges that this retaliation violated their rights under (1) the First Amendment freedom of speech provisions; (2) the Idaho Constitution's freedom of speech provisions; and (3) the Idaho Protection of Public Employees Act (Whistleblower Act).  They also include claims for intentional and negligent infliction of emotional distress.

Under Rule 15(d) of the Federal Rules of Civil Procedure, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

**Memorandum Decision & Order – page 2**

The "rule is a tool of judicial economy and convenience [and] its use is therefore favored." *Keith v. Volpe,* 858 F.2d 467, 473 (9th Cir. 1988). This Circuit allows "the bringing of new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy." *Id.* Thus, in *Keith,* plaintiffs originally claimed that a city failed to provide any housing for those displaced by freeway construction, and the Circuit permitted a supplemental claim – arising after the complaint was filed – that the city failed to approve a specific housing project designed for just that purpose. *Id.* But in another case, the Circuit denied a supplementation when the new claim would reopen a case closed four years earlier. *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

In the present case, the claims made in the supplemental complaint are, with one exception, closer to those made in *Keith* than to those made in *Neely.* For example, the retaliation claim under the Whistleblower Act carries forward an existing claim – retaliation – against existing defendants by alleging new acts of retaliation, including terminations, demotions, and other adverse employment actions for pursuing this lawsuit. As the leading treatise on federal practice points out, it would be "wasteful and inefficient" to require that a separate lawsuit be filed on this claim. *See* 6A Wright Miller & Kane, *Federal Practice & Procedure,* § 1506 at p. 269 (2010).

Presenting a somewhat more difficult issue is the new claim that these retaliatory employment actions violate the First Amendment. The Ninth Circuit dismissed plaintiffs' First Amendment claims in its 2016 decision, holding that plaintiffs made "no showing that Defendants violated the constitutional rights of any of the Plaintiffs."

*Ledford v. Idaho Dept. of Juvenile Corrections*, 2016 WL 4191903 (9th Cir. 2016) (unpublished disposition) at *2. The Circuit ruled that the First Amendment claims of plaintiffs Penrod, Reyna, Fordham, Littlefield, and McCormick should be dismissed because "none of these five plaintiffs spoke on a matter of public concern as a private citizen," but instead spoke as employees making internal complaints about workplace conditions, speech that was not subject to First Amendment protection. *Id*. at *1. The Circuit also ruled that the First Amendment claims of plaintiffs Ledford, Gregston, DeKnijf, McKinney, and Farnworth should be dismissed because "[n]one of these plaintiffs experienced retaliation by defendants as a result of their speech." *Id*.

The supplemental complaint could be seen as an end-run around these dismissals – an improper attempt to resurrect dead claims.  In fact, however, the new First Amendment claims cure all the deficiencies identified by the Circuit in the old First Amendment claims:  For the first time, all plaintiffs are now alleging actual retaliation, and the speech that prompted the retaliation – pursuing this federal lawsuit – is no longer limited to employees' internal complaints about the workplace and is now worthy of protection by the First Amendment.  *See Hagan v. City of Eugene,* 736 F.3d 1251, 1258 (9th Cir. 2013) (holding that the First Amendment protects speech of a public employee made as a citizen but does not protect his speech involving "concerns [communicated] up

the chain of command at his workplace about his job duties"). The Court therefore declines to strike the First Amendment claims from the supplemental complaint.[1]

Plaintiffs are also trying to add claims for intentional and negligent infliction of emotional distress created by the new retaliatory adverse employment decisions. Almost four years ago, in 2014, the Court dismissed claims for emotional distress based on the retaliatory actions alleged to that point because plaintiffs had failed to file the proper Notices of Tort Claim under the Idaho Tort Claims Act. *See Memorandum Decision (Dkt. No. 65).*

The same flaw exists regarding the new tort claims for emotional distress plaintiffs are attempting to add by the supplemental complaint. None of the plaintiffs have filed Notices, except for Ledford, and her Notice was untimely. Ledford's Notice was required to be filed within 180 days "from the date the claim arose or reasonably should have been discovered, whichever is later." *See Idaho Code § 6-906.* Ledford was fired on December 19, 2013. This was about a year-and-a-half after Ledford filed this lawsuit, alleging various acts of retaliation short of termination. Thus, when she was fired on December 19, 2013, she should have known that she had a claim for retaliatory discharge. In other words, December 19, 2013, was the date her claim for retaliatory firing arose, and it was also the date she should have discovered she had a claim.

---

[1] Defendants argue – and plaintiffs agree – that the claims for monetary compensation in the supplemental complaint are made only against Harrigfeld and Grimm in their individual capacities. As the Court has previously held, and as remains the law of this case, claims for monetary relief against the State of Idaho, the Department of Juvenile Corrections, and other defendants in their official capacity are barred by the Eleventh Amendment.

Ledford waited 211 days – about a month past the 180-day deadline – to file her Notice on July 18, 2014.  She offers no excuse for the untimely filing.  The Court will therefore strike all claims for intentional and negligent infliction of emotional distress from the supplemental complaint.

In conclusion, the Court will grant the plaintiffs' motion to file the supplemental complaint, but will strike all references to intentional and negligent infliction of emotional distress.

### Defendants' Motion for Summary Judgment

The defendants seek summary judgment on several grounds.  First, defendants seek to dismiss any claims under the free speech provisions of the Idaho Constitution made in the Second Amended Complaint, *i.e.,* the complaint that predates the supplemental complaint just filed.  As the Court discussed above, the Ninth Circuit ordered that the First Amendment claims made in the Second Amended Complaint be dismissed, and that decision – defendants argue – must be applied with equal force to the identical claims made under the Idaho Constitution, Article I, § 9.  This argument finds support in Idaho caselaw.  *See Matter of Contempt of Wright,* 700 P.2d 40, 45 (Id.Sup.Ct. 1985) (holding that "Art. I § 9 of the Idaho Constitution provides for protection of freedoms substantially similar to those of the First Amendment to the U.S. Constitution").  Unless plaintiffs can show that Article I § 9 of the Idaho Constitution provides greater protection than the First Amendment, the provisions should be interpreted the same way.  *See CDA Dairy Queen, Inc. v. State Insurance Fund,* 299 P.3d 186 (Id.Sup.Ct. 2013).  Plaintiffs have made no such showing.  Therefore, plaintiffs'

claims under the Idaho Constitution set forth in the Second Amended Complaint must be dismissed just as the similar First Amendment claims were dismissed.  This means that the only claims remaining under the U.S. and Idaho Constitutions are those alleging retaliatory firing, demotion, and other adverse employment action, caused by the plaintiffs' pursuit of this lawsuit, contained in the supplemental complaint.

Defendants next seek to dismiss any claims under the Whistleblower Act for compensatory damages against Harrigfeld and Grimm personally.  The Idaho Supreme Court has recently held that the Act does not allow for compensatory damages against individual employee defendants.  *Hammer v. City of Sun Valley,* 2016 WL 7384133 (Id.Sup.Ct. Dec. 21, 2016).  Plaintiffs agree that under *Hammer,* they cannot seek compensatory damages under the Whistleblower Act against Harrigfeld and Grimm, and so this portion of the motion for summary judgment will be granted.

Defendants ask the Court to dismiss the injunction claims of all plaintiffs who no longer work at the IDJC because their injunction claims are moot.  More specifically, defendants argue that any workplace changes mandated by injunctive relief would not benefit plaintiffs who have left the IDJC.  But the landscape of this case has changed with the filing of the supplemental complaint that seeks reinstatement and other compensatory relief for terminations and demotions – those issues are not moot.  And if some employees are reinstated, any workplace changes mandated by injunctive relief would inure to their benefit.  This portion of the motion for summary judgment must be denied.

Finally, defendants move for summary judgment on the new retaliation claims made by three plaintiffs.  The defendants took the depositions of these three plaintiffs and

asked them about their new allegations that they were subjected to adverse employment actions in retaliation for filing this lawsuit. Defendants then filed a supplemental brief arguing that there is no evidence of retaliation as a matter of law. But the depositions are replete with allegations of retaliation that at the very least create issues of fact precluding summary judgment. This portion of the summary judgment motion must be denied.

**Conclusions Regarding Motion for Summary Judgment**

In conclusion, the Court will grant the motion for summary judgment in part. The Court will dismiss plaintiffs' claims (1) under the Idaho Constitution set forth in the Second Amended Complaint on the same grounds that the Ninth Circuit dismissed the First Amendment claims in that pleading; and (2) under the Whistleblower Act for compensatory damages against Harrigfeld and Grimm personally. The motion will be denied in all other respects.

**Attorney-Client Privilege Dispute**

The parties disagree over whether IDJC Director Harrigfeld properly invoked the attorney client privilege in refusing to answer four questions during her deposition. To resolve this dispute, the Court will review the context of that deposition.

After plaintiffs filed their motion to supplement the complaint, defendants asked to take the depositions of three individuals concerning the claims made in the proposed supplemental complaint. The Court granted that request. One deponent was Director Harrigfeld who testified that after this lawsuit was filed, she became aware that Ledford had secretly recorded conversations with IDJC personnel. Harrigfeld testified that she fired Ledford for making those recordings, not for pursuing this lawsuit. In response to a

further series of questions, Harrigfeld testified that: (1) She first learned of Ledford's

recordings when an attorney from the Attorney General's (AG's) office gave her

Ledford's tapes that had been obtained in discovery in this case; (2) Before she fired

Ledford, she sought and relied upon legal advice from the AG's office, specifically

attorney Marc Crecelius in that office.  *See Harrigfeld Deposition (Dkt. No. 108-1)* at p.

22; and (3) An attorney in the AG's office drafted the termination letter that she sent to

Ledford.  *Id.* at pp. 36-37.

Plaintiffs' counsel then asked four questions to which defense counsel instructed

Harrigfeld not to answer based on attorney client privilege:

(1) Harrigfeld was asked whether she sought legal advice because Ledford "was a
    plaintiff in this lawsuit . . . ?"  *Id.*  at pp. 22-23;
(2) Harrigfeld was asked:  "[D]id you personally, before you talked to any
    attorneys, have any concern that it might appear . . . retaliatory?"  *Id.* at p. 24;
(3) Harrigfeld was asked if Ledford's firing "might appear to be retaliatory?"  *Id.*
    at p. 23.
(4) Harrigfeld was asked how she received the tapes that led her to fire Ledford,
    and she responded that Nancy Bishop, a deputy attorney with the AG's office,
    gave them to her.  Harrigfeld was then asked whether Bishop told her
    "anything about what you could do based upon these [tapes] when she showed
    them to you."

Questions 2 and 3 did not seek privileged attorney-client communications.

Instead, they asked about Harrigfeld's own view of the firing.  Defendants argue that the

questions were "a roundabout way of asking her to tell you what she talked with her

attorneys about."  *See Harrigfeld Deposition, supra,* at p. 24.  But adopting this argument

would preclude any inquiry into why Harrigfeld fired Ledford, the central issue in

Ledford's retaliation claim.  These two questions did not inquire about attorney-client

communications and thus are not protected by the privilege.

**Memorandum Decision & Order – page 9**

Questions 1 and 4 do inquire about communications between the AG's office and Harrigfeld, and are therefore protected unless the privilege was waived.  Implied waiver occurs when a party asserting the privilege attempts to use it as both a shield and a sword. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992).  In practical terms, this means "that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford,* 311 F.3d 715 (9th Cir. 2003)*.*

Ledford argues that Harrigfeld has waived the privilege by seeking qualified immunity because she relied on the advice of her counsel.  Harrigfeld responds that "the advice of counsel is not relevant to that defense [of qualified immunity]", citing cases from the Second and Third Circuits.  *See Brief (Dkt. No. 109)* at p. 3.

The law in the Ninth Circuit is different, however.  While a lawyer's advice does not render a state official's "conduct per se reasonable" for purposes of qualified immunity, "it is evidence of . . . good faith."  *Stevens v. Rose,* 298 F.3d 880, 884 (9th Cir. 2002).  Where an official consults with an attorney, "it is evidence of good faith," and in a "slim" case, "tips the scale in favor of qualified immunity." *Ewing v. City of Stockton*, 588 F.3d 1218, 1231 (9th Cir. 2009). Otherwise stated, while an attorney's advice "will not automatically insulate an officer from liability," "it goes far to establish qualified immunity."  *Id.*  That is because "it can show the reasonableness of the action taken." *Richardson v. Schubert,* 2017 WL 3952165 (D. Ore. July 26, 2017).

In this case, Harrigfeld is shielding facts (her communications with the AG) that she wishes to use as a sword (to establish her good faith).  Harrigfeld argues that she has

**Memorandum Decision & Order – page 10**

not asserted the defense that she relied on the advice of counsel.  But it does not matter. The facts – that Harrigfeld relied on the advice of counsel in firing Ledford and had counsel draft the termination letter – will unavoidably tend to tilt a jury toward a finding of good faith, even if never expressly spun into an advice-of-counsel legal defense.

It is the presence of the facts themselves rather than the assertion of a legal defense that triggers the waiver here.  What if defense counsel agreed to essentially write those facts out of the case by never mentioning that Harrigfeld relied on the advice of counsel?  The "sword" disappears but an elaborate fiction takes its place, implying that Harrigfeld made the decision on her own and drafted her own termination letter.  Cases are tried on the facts, not on an artificial construct.

For all these reasons, the Court finds that the privilege has been waived with regard to Questions 1 and 4.  As stated above, Questions 2 and 3 do not seek privileged information.

**<u>Trial Date</u>**

Trial in this case is set for February 26, 2018.  The Court will direct the Clerk to set up a status conference to discuss the impact of this decision on the trial date.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to supplement the Second Amended Complaint (docket no 99) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks to supplement the Second Amended Complaint by adding claims under (1) the First Amendment; (2) Article I § 9 of the Idaho

**Memorandum Decision & Order – page 11**

Constitution; and (3) the Idaho Protection of Public Employees Act (Whistleblower Act). It is denied to the extent it seeks to add claims of intentional and negligent infliction of emotional distress.

IT IS FURTHER ORDERED, that the motions for summary judgment (docket nos. 96 & 106) are GRANTED IN PART AND DENIED IN PART. They are granted to the extent they seek dismissal of plaintiffs' claims under the Second Amended Complaint (1) under the Idaho Constitution, Article I § 9, and (2) under the Idaho Protection of Public Employees Act (Whistleblower Act) for compensatory damages against Harrigfeld and Grimm personally. The motions are denied in all other respects.

IT IS FURTHER ORDERED, that with regard to Questions 1 & 4 set forth above, the attorney-client privilege has been waived. With regard to Questions 2 & 3, no attorney-client privilege exists.

IT IS FURTHER ORDERED, that the Clerk shall set a telephone status conference with all parties to discuss the February 26, 2018, trial date.

DATED: January 24, 2018

B. Lynn Winmill
Chief U.S. District Court Judge